## CARR *v.* THE STATE.

When material evidence, not merely cumulative or impeaching in its character, but relating to new and important facts, is discovered after a trial, and it appears that the failure to discover it before trial was not due to a want of diligence, and when the nature of the newly discovered evidence is such that it might, on another hearing, produce a different verdict, a motion for a new trial, based on the ground of such newly discovered evidence, should be granted.

Argued February 20, — Decided March 15, 1899.

Indictment for murder. Before Judge Candler. Laurens superior court. December 28, 1898.

*Howard & Armistead,* by *James K. Hines,* for plaintiff in error.
*J. M. Terrell,* attorney-general, and *H. G. Lewis,* solicitor-general, contra.

LITTLE, J.   We find it unnecessary to consider at length any of the grounds of the motion for new trial, except those based on newly discovered evidence.   No one was present at the time of the homicide except the deceased and the accused. The State insisted that the circumstances of the killing, with the previous conduct of the accused to the deceased, and his threats, coupled with the nature of the wound, the explanation given by the accused when the homicide was ascertained, and other circumstances, authorized the jury to find the defendant guilty.   The accused, on his part, contended that the homicide was the result of accident, and detailed at length the manner in which the wound was inflicted.   We are not prepared to say that the verdict, as rendered by the jury, was without evidence to support it, nor that it was contrary to law; nor do we think that the court erred in the admission of the evidence complained of.   Because of the fact that there were no witnesses to the homicide and the manner in which it was done depended entirely upon circumstances, all facts which went to show the nature of the wound, where the ball entered the body, where it made its exit, the nature and condition of the weapon used, were circumstances which so intimately related to the killing that they should be carefully considered in determining the truth or falsity of the account given by the accused about the real manner in which the wound was received by the deceased.   The wound was inflicted with a Winchester rifle, and it was claimed by the accused that at the time the gun fired he was sitting about a foot or a foot and a half from a tree; that the woman killed was lying on the ground on her right side, with her elbow resting on the ground and her head on her hand; that he had the rifle across his lap, and did not know that it was even pointing towards her; that his left side was to her face; that the catch of the guard did not hold it very tight, and he was working the guard with his finger when the gun fired.   On the trial one witness testified, in rebuttal of this theory, that in reversing the lever of a Winchester rifle the guard would have to be moved six or eight inches, and that before the lever is moved and it is put in that position, it is necessary that the gun should be cocked.   Another witness tes-

tified on this subject, that he was acquainted with the Winchester rifle and knew how that weapon is shot, loaded and reloaded, that it is not possible to fire a Winchester rifle by moving the guard, that there is a safety plug that drops behind the trigger, and when you push the guard back in position it moves the plug; when you throw the guard forward, as soon as you start it forward, the plug drops down behind the trigger and prevents the trigger from moving; that when you press the guard down, a little mechanism that moves the cartridge would keep it from falling out of place; that all Winchester rifles are made with that plug; that a Winchester rifle is patent gun; and that the cartridge would not get in position and fire until you get the guard back. It will be noted that the defendant claimed that the gun, for some unaccountable reason, fired at a time when he was not expecting it, and when he was only working the guard. The object of the evidence introduced, evidently, was to contradict the account which the defendant gave of the manner in which the gun fired, and to show that a Winchester rifle could not be fired in the manner in which the defendant claimed that this gun was discharged. This evidence must have had a very important bearing on the case.

The newly discovered evidence, as set out in the affidavit of Robert Shoemake, is to the effect that he was the owner of the gun with which the deceased was killed, that he had loaned this gun to the accused prior to the homicide, that it was defective in some way in the lock, and before the occasion of the homicide the gun, while being handled, had been discharged without any apparent cause; at other times the gun was used for a considerable time without such an accident. It was also, at the trial, an important fact to be ascertained as to where the ball from the rifle entered the head of the deceased. Under the account given by the accused when he reported the homicide, necessarily the ball must have entered the front part of her head. At the trial, a witness who was a physician testified as follows, on that subject: "I examined the wound; there was no powder burn about the face; the ball passed between two of her fingers a little to the right of the left eye, and came out about an inch and a half lower than where it went in. I ex-

amined the wound on the other side. From what I know
of gunshot wounds, I would say the ball went in from behind.
It generally makes a larger whole at the exit than where it.
goes in. I am a practicing physician. If I had been called
there to make a decision as to which side of the head that.
ball entered, I would have said it went in at the back and
came out in front." This, and other similar evidence tending
to prove the same thing, must also have been very material
in the case, because, if the ball entered the back of the head
and came out in front, necessarily the account which the ac-
cused gave of the position the woman was in, and the manner
in which the wound was inflicted, was untrue, and tended to
show that it was otherwise inflicted, and that the shot was fired
from her rear. The newly discovered evidence, set out in the
affidavits of W. W. Bailey, W. J. Fordham, T. D. Bailey, I.
B. Hitson, A. J. Weaver, and Enoch M. Howard, disputes this
theory of the State. The last-named five affiants say, that
they served as jurors on the inquest held over the body of the
deceased the day after the homicide; that they did not call a
physician to make an examination of the wound on the body
of the deceased, but they themselves carefully examined such
wound, both in front and back of the head; that they found
what appeared plainly a large hole in the front of the skull,.
and, after shaving the hair from the back of her head, found
that the back of the head was shattered almost to pieces, with
pieces of bones and brain in the hair; which convinced these
jurors that the ball entered the front of the head. Here, then,.
was testimony directly negativing the theory of the State
as to where the ball entered the head, and tending to show, to
some extent at least, that the wound might have been inflicted
while the deceased was in the position which the defendant.
described, when he called for assistance. These affiants further
say that they never communicated these facts to the defend-
ant, nor to his attorneys, before or at the time of the trial..
Accompanying the affidavits of the witnesses by whom this
newly discovered evidence is expected to be proved are the
affidavits of the accused, that he did not know of the evi-
dence of either of these witnesses, nor could the same have.

been procured by the exercise of due diligence. Also, affidavits of the same tenor from his counsel. It was, of course, possible, with the active diligence which the defendant and his counsel should use in preparing a case of this nature for trial, to have obtained a description of the weapon with which the wound was inflicted, from the owner; but without anything to excite their inquiries in this direction, we are not prepared to say that this information was not obtained because of the want of due diligence.

As to the personal examination of the wound made by the five witnesses who served on the coroner's jury, we can not see how the failure to procure their testimony resulted from any want of diligence. They were not witnesses whose testimony would appear in the report of the evidence, made by the coroner, but jurors charged with the duty of ascertaining the cause of death, and who, in the discharge of their duties, made a careful personal examination, the result of which was not communicated to the accused or his counsel before nor at the trial. We therefore think that this alleged newly discovered evidence should not be disregarded on the ground that due diligence was not shown in procuring it, nor do we think that it is merely cumulative in its character. So far as appears in the record, there was no evidence that the rifle was out of condition, nor any relating to this condition. It is true that, during the examination of one or more of the witnesses who testified as to the construction of a Winchester rifle and the only manner in which it could be fired, questions were asked in relation to whether their testimony would apply to this character of arm if the lock or working parts should be rusty, etc., but nothing, which we have observed, as to the condition of the working parts of this rifle, which would or would not cause it, by other means than those testified to, to be discharged. Certainly, therefore, some of this evidence was not cumulative at all, but new and original, as well as very material. The rule in relation to the grant of new trials for newly discovered evidence is, that it must be material, not merely cumulative in its character, but relating to new and material facts; shall be discovered by the applicant after the rendition of the verdict, and brought to the notice

of the court within a proper time. When all this appears, it is not absolutely required that a new trial shall be granted. The provision of law is, that when these requisites appear, a new trial may be granted. Penal Code, § 1061. In the case of *Thompson* v. *State*, 60 *Ga.* 619, this court ruled that the newly discovered evidence, in view of the evidence had on a former trial, which might produce a different result, being material and not merely cumulative, was sufficient to authorize the grant of a new trial. In *Dale* v. *State*, 88 *Ga.* 552, this court ordered a new trial on the ground that the ends of justice would be promoted by allowing the defendant an opportunity to avail himself of the newly discovered evidence. And so we think here. The truth of the matter must necessarily be ascertained by the jury, either through the statement of the accused, or from the circumstances which convincingly show that statement to be untrue. It is an important case to the defendant, and one in which he is entitled to have the benefit of all accessible legal evidence; and it may be, that if this evidence had been before the jury, a different result would have been reached—at least, the jury, having this evidence before them, might have drawn more or less corroboration of the account given by the defendant immediately after the homicide, as well as his statement made at the trial. We do not go to the extent of saying that this evidence should or would have controlled the verdict. The value of it was for the jury. With it before them, they must still decide the truth of the issue. What we do say is, that the evidence appearing to be material and not merely cumulative, having been shown to be newly discovered, and without want of diligence in its discovery, a new trial should have been granted in order to allow the jury to pass on it in connection with the other evidence in the case, and to say, after due consideration of all the facts attendant, whether the defendant is or is not guilty. In our opinion, the court erred in overruling the motion for new trial on the ground of newly discovered evidence.

*Judgment reversed. All the Justices concurring.*